David W. SLOMAN, Appellee,

v.

**BOARD OF PHARMACY EXAMINERS OF the STATE OF IOWA, Appellant.**

No. 88–709.

Supreme Court of Iowa.

May 17, 1989.

Thomas J. Miller, Atty. Gen., Thomas D. McGrane, Asst. Atty. Gen., for appellant.

Richard E. Mundy, Cedar Rapids, for appellee.

Considered by LARSON, P.J., and CARTER, LAVORATO, SNELL, and ANDREASEN, JJ.

SNELL, Justice.

The Iowa Board of Pharmacy Examiners appeals the decision of the district court to set aside professional discipline imposed by the board upon David W. Sloman. The district court concluded the statutes under which Sloman was disciplined were unconstitutionally vague and that there was not substantial evidence to support the board's decision. We reverse.

Substantial evidence in the record supports the following findings of fact made by the board. Sloman is a licensed pharmacist, practicing as the sole proprietor of a Medicap Pharmacy in Cedar Rapids, Iowa. In June 1986, an audit by an investigator of the board was conducted of Sloman's sales of schedule V narcotic cough preparations (defined at Iowa Code section 204.212 (1985)). The audit revealed that Sloman made a total of 802 sales from October 17, 1983 to June 23, 1986; of this total, 514 sales were made to ten individuals.

The board was able to detail the frequency of these sales to each individual. From October 13, 1984 to April 1, 1986, Sloman made ninety-two sales of schedule V cough syrup to M.F. From January 5, 1984 to June 6, 1986, seventy-two sales were made to G.M.; during roughly the same period, forty-one sales were made to A.M. From September 25, 1984 to June 17, 1986, sixty-nine sales were made to J.L. From December 21, 1984 to March 11, 1986, sixty sales were made to B.T. From January 9, 1985 to June 4, 1986, thirty-eight sales were made to A.B.; seventeen sales were made to T.B. from May 1985 to May 1986. From December 8, 1984 to August 31, 1985, fifty-eight sales were made to G.W. From January 7, 1985 to June 17, 1986, forty-two sales were made to M.S. And from October 18, 1984 to March 12, 1986, thirty-five sales were made to R.H.

With regard to these sales, the board found no evidence that Sloman had violated its rule against multiple sales of schedule V preparations within a forty-eight-hour period. Nor did the board find any evidence that Sloman's records regarding these sales had been altered.

However, the board concluded that at least some of these sales violated Iowa Code sections 155.13(3) and 204.308(4), based on the frequency and number of the sales. The board accordingly suspended Sloman's license to practice pharmacy for one year and placed him on probation for five years after the period of suspension. The terms and conditions of Sloman's probation were also provided by the board's order.

Sloman then petitioned the district court for judicial review. The district court concluded the phrase "lawful purposes" in section 155.13(3) and the phrase "medical purpose" in section 204.308(4) were unconstitutionally vague. As an apparent corollary to this conclusion, the court determined

there was not substantial evidence that Sloman's sales were for other than a medical purpose.

I. *Vagueness.* The claim that a statute is unconstitutionally vague proceeds from the protections provided under the due process conceptions of amendments V and XIV, United States Constitution and article I, section 9, Iowa Constitution. The root of the vagueness doctrine is a rough idea of fairness. *Colten v. Kentucky,* 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584, 590 (1972).

Section 155.13(3) provides in pertinent part:

> [T]he board shall have the power to deny, suspend or revoke a license, when the applicant or licensee, or any employee, providing the offense is committed on licensed premises or is in the conduct of the business licensed, is guilty of any of the following facts or offenses:
>
> . . . .
>
> 3. Distributing on the premises of intoxicating liquors or drugs for any *other than lawful purposes.*
>
> [Emphasis added.]

Chapter 204, governing controlled substances (drugs), lists these substances in five schedules, according to their currently accepted medical use and their potential for abuse and physical or psychic dependence. *See* Iowa Code §§ 204.203, 204.205, 204.207, 204.209, 204.211. Section 204.308(4) provides:

> A controlled substance included in schedule V shall not be distributed or dispensed *other than for a medical purpose.*
>
> [Emphasis added.]

Our interpretation of statutes challenged on the basis of vagueness is governed by the following guidelines:

> A statute offends the Due Process Clause if it does not give a person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly. It meets the constitutional test if the meaning of the words used can be fairly ascertained by reference to similar statutes, other judicial determinations, reference to the com-

mon law, to the dictionary, or if the words themselves have a common and generally-accepted meaning.

*Miller v. Iowa Real Estate Comm'n,* 274 N.W.2d 288, 291 (Iowa 1979) (quoting *State v. Williams,* 238 N.W.2d 302, 307 (Iowa 1976)).

Whenever a constitutional challenge to a statute is made, a strong presumption of validity exists. However, when the action taken for violation of the statute is civil in nature, as here, the test for vagueness is less stringent:

> Even if more specific language could be devised, it is apparent the absence of criminal sanctions requires less literal exactitude to comport with due process; unless the statute clearly, palpably and without doubt infringes the constitution it will be upheld.

*Miller,* 274 N.W.2d at 292 (quoting *Millsap v. Cedar Rapids Civ. Serv. Comm'n,* 249 N.W.2d 679, 684 (Iowa 1977)). In this regard, the Supreme Court has noted that "in the field of regulatory statutes governing business activities, where the acts limited are in a narrow category, greater leeway is allowed." *Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110, 116–17 (1972).

■ We reject Sloman's challenge to the phrase "lawful purposes" in section 155.13(3). This section is clearly intended to grant the board authority to discipline pharmacists whose distribution of drugs or liquor on the licensed premises is in contravention of state or federal law. In this case, the board found Sloman's sales of schedule V codeine cough syrup were "other than for a medical purpose," in violation of section 204.308(4).

■ Other jurisdictions have applied the vagueness test to the phrase "medical purpose" in the context of criminal proceedings. In *People v. Terry,* 720 P.2d 125 (Colo.1986), a chiropractor appealed his conviction of second-degree sexual assault for inserting his fingers into a patient's vagina "for other than bona fide medical purposes." The Colorado Supreme Court defined "medical" as: "Pertaining, relating,

or belonging to the study and practice of medicine, or the science and art of the investigation, prevention, cure, and alleviation of disease." *Id.* at 127 (quoting *Black's Law Dictionary* 885 (5th ed. 1979)). "Purpose" was defined as: "That which one sets before him to accomplish; an end, intention, or aim, object, plan, project." *Id.* (quoting *Black's* at 112). The court concluded that the phrase "bona fide medical purposes" provided a sufficiently clear practical guide for law-abiding behavior for a person of ordinary intelligence:

> [S]exual penetration or intrusion made during treatment or examination is for other than "bona fide medical purposes" when it is not taken in good faith, honestly, and sincerely in the course of investigating, preventing, alleviating, or curing a disease or malady.

*Id.*

In *United States v. Hayes*, 595 F.2d 258, 261 (5th Cir.1979), a pharmacist appealed his conviction of conspiracy to distribute controlled substances that were not issued for a "legitimate medical purpose." The Fifth Circuit rejected his contention that, because he was not a physician, he did not have any reasonable means of determining a prescription was valid, other than to check with the prescribing physician. The court concluded that whether the defendant knew the prescriptions were not for a legitimate medical purpose was a question of fact:

> The volume of prescriptions filled for a single individual as well as the prices charged by Hayes support the jury's conclusion that Hayes also knew that the prescriptions were not issued for a legitimate medical purpose.

*Id.*

In *Jones v. State*, 684 S.W.2d 223, 224 (Tex.App.1985), a pharmacist appealed his conviction of two counts of dispensing a controlled substance "without a valid medical purpose and not in the course of professional practice." The court rejected the defendant's vagueness challenge, finding that the evidentiary factors present in *Hayes* were also present in the case before it. *Id.* at 225. The court quoted with approval the statement in *Hayes* that "the

facts of this case show how a pharmacist can know the prescriptions are issued for no legitimate medical purpose without his needing to know anything about medical science." *Id.*

These criminal cases amply demonstrate why Sloman's vagueness challenge, made in a civil context, must fail. Sloman cannot show that the phrase "medical purpose" is so inexact that it "clearly, palpably and without doubt" infringes the Constitution. *See Miller*, 274 N.W.2d at 292. In fact, the meaning of "medical purpose" in the context of section 204.308(4) can be fairly ascertained: Distribution or dispensing of a controlled substance is "other than for a medical purpose" when it is not made in good faith in the course of preventing, alleviating, or curing a disease or malady. *See Terry*, 720 P.2d at 127.

Contrary to the contention of Sloman, this conclusion is not at odds with our decision in *State v. Webb*, 261 Iowa 1151, 156 N.W.2d 299 (1968). In *Webb*, we concluded the phrase "acts necessary in the ethical and legal performance of his profession," which provided an exemption for certain professions from a proscription on drug distribution, was void for unworkability as applied to a pharmacist. *Id.* at 1157, 156 N.W.2d at 303. There was nothing in the record to indicate what was or was not necessary and both ethical and legal: no code of ethics for pharmacists had been introduced into evidence. *Id.* at 1154, 156 N.W.2d at 301–02. We therefore concluded the statute was too vague to be enforced as applied to pharmacists. *Id.*

The infirmity found in the statute in *Webb* is not present here. The meaning of the statute at issue in this case can be fairly ascertained without reliance upon an unintroduced ethical code or other unavailable definitional aids. Our analysis that the vagueness doctrine is inapplicable here is in accord with the U.S. Supreme Court's treatment of this issue as applied to other occupational disciplines. In *Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed. 2d 439 (1974), an army captain was court martialed for "conduct unbecoming an officer and a gentleman." The Supreme Court held the term as used in the military context was neither vague nor overbroad.

A federal employee was dismissed in *Arnett v. Kennedy,* under a provision of the Lloyd–LaFollette Act authorizing removal "for such cause as will promote the efficiency of the service." 416 U.S. 134, 140, 94 S.Ct. 1633, 1637, 40 L.Ed.2d 15, 25 (1974). In upholding the validity of the statute against a vagueness attack on conduct regulation, the court said

> There are limitations in the English language with respect to being both specific and manageably brief, and it seems to us that although the prohibitions may not satisfy those intent on finding fault at any cost, they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest.

416 U.S. at 159, 94 S.Ct. at 1647, 40 L.Ed.2d at 36, citing to *CSC v. Letter Carriers,* 413 U.S. 548, 578–579, 93 S.Ct. 2880, 2897, 37 L.Ed.2d 796 (1973).

We hold that sections 155.13(3) and 204.-308(4) are not unconstitutionally vague as applied to Sloman. These statutes are sufficiently definite to be understood by pharmacists, to whom the Board's regulatory actions are directed.

■ II. *Sufficiency of Evidence.* Judicial review of the board's determination that Sloman's sales were not for a medical purpose is pursuant to the terms of Iowa Code chapter 17A, the Iowa Administrative Procedures Act. Iowa Code § 155.16 (1985). Accordingly, our review is at law, not de novo. *Ward v. Iowa Dep't of Transp.,* 304 N.W.2d 236, 237 (Iowa 1981). We must determine whether the board's action is supported by "substantial evidence in the record made before the agency when that record is viewed as a whole." Iowa Code § 17A.19(8)(f). We consider all of the evidence, including that which preponderates against the board's action as well as that which supports it, according proper respect for the expertise of the board. *Cerro Gordo County Care Facility v. Iowa Civ. Rights Comm'n,* 401 N.W. 2d 192, 195–96 (Iowa 1987); *Iowa Health Systems Agency v. Wade,* 327 N.W.2d 732, 733 (Iowa 1982). "Substantial evidence" under this standard is that which a reasonable mind would accept as adequate to reach a given conclusion. *City of Davenport v. Public Employment Relations Bd.,* 264 N.W.2d 307, 311 (Iowa 1978).

The record reveals Sloman sold a large amount of codeine cough syrup to a limited number of people for approximately two-and-one-half years. Expert testimony indicated these preparations would be most appropriate for short-term suppression of coughing, rather than to treat a chronic persistent cough. The medical danger presented by the abuse of these preparations is that, depending upon the situation, suppression of the cough for a long period of time can worsen the underlying condition.

One of the reasons for requiring that a pharmacist not dispense schedule V preparations for other than a medical purpose is to place the responsibility for preventing such abuse and the psychological dependence that can ensue from it upon the trained professional, instead of upon the unknowing layperson. The board concluded Sloman abdicated this responsibility by indiscriminately selling these preparations to the same people again and again. Substantial evidence in the record supports this conclusion. We therefore reverse the judgment of the district court and reinstate the decision and order of the board.

REVERSED.